1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11   JUDITH TAPIA,                           NO. CV 09-5942 AGR
12            Plaintiff,
13        v.
14   MICHAEL J. ASTRUE,                      **MEMORANDUM OPINION AND**
     Commissioner of Social Security,        **ORDER**
15
16            Defendant.
17

18        Judith Tapia filed this action on August 18, 2009.  Pursuant to 28 U.S.C. §

19   636(c), the parties consented to proceed before Magistrate Judge Rosenberg on

20   September 1 and 3, 2009.  (Dkt. Nos. 8, 9.)  On April 13, 2010, the parties filed a

21   Joint Stipulation ("JS") that addressed the disputed issues.  The Court has taken

22   the matter under submission without oral argument.

23        Having reviewed the entire file, the Court affirms the decision of the

24   Commissioner.

25   ///

26   ///

27   ///

28   ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.**

**PROCEDURAL BACKGROUND**

On May 21, 2007, Tapia filed an application for disability insurance benefits. Administrative Record ("AR") 13. On May 30, 2007, Tapia filed an application for supplemental security income benefits. *Id.* In both applications, Tapia alleged a disability onset date of October 1, 2001. *Id.* The applications were denied initially. AR 66-75. Tapia requested a hearing before an Administrative Law Judge ("ALJ"). AR 76. On January 21, 2009, the ALJ conducted a hearing at which Tapia and a vocational expert testified. AR 25-63. On February 11, 2009, the ALJ issued a decision denying benefits. AR 7-22. On April 13, 2009, Tapia requested that the Appeals Council review the decision denying benefits. AR 5-6. On June 24, 2009, the Appeals Council denied the request for review. AR 1-4. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.**

**DISCUSSION**

### A.    Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.    The ALJ's Findings

The ALJ found that Tapia meets the insured status requirements through March 31, 2005.  AR 15.

Tapia has the severe impairments of left upper extremity pain disorder; cervical spine pain disorder; and low back pain disorder. *Id.* She has the residual functional capacity ("RFC") to perform medium work.  AR 17-20.  She "can occasionally lift up to 50 pounds and frequently lift up to 25 pounds."  AR 17.  Tapia "can stand or walk for approximately 6 hours per 8-hour workday, with normal breaks; and sit for approximately 6 hours per 8-hour workday, with normal breaks." *Id.* "She can push, pull, lift and reach with the left upper extremity, but not over shoulder height.  [She] cannot climb ladders, ropes or scaffolds, but can frequently climb ramps or stairs.  She can frequently kneel, crouch and crawl, and occasionally stoop. [She] must avoid all work that involves repeated neck rotation and forced flexion or extension of the neck for prolonged periods.  She must avoid concentrated exposure to extreme cold, hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions.  [She] can perform work that is limited to 1 or 2-step simple, routine and repetitive tasks in a low stress job" which does not require "any unusual, very fast pace or production rate requirements." *Id.*

3

The ALJ found that Tapia is not able to perform her past relevant work as a demonstrator and ticketer, but there are jobs that exist in significant numbers in the national economy that Tapia can perform.  AR 20, 21.

## C.    Treating Physician

Tapia argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Tan.  JS 5-13.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations and quotation marks omitted).  When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) length of the treatment relationship and frequency of examination;[1] (2) nature and extent of the treatment relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4)

---

[1]  "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[2]  "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."  20 C.F.R. § 404.1527(d)(2)(ii).

1   consistency with record as a whole; and (5) the specialty of the physician

2   providing the opinion.  *See id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6).  "When

3   there is conflicting medical evidence, the Secretary must determine credibility and

4   resolve the conflict."  *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002)

5   (citation and quotation marks omitted).

6           An examining physician's opinion constitutes substantial evidence when it

7   is based on independent clinical findings.  *Orn,* 495 F.3d at 631.  However,

8   "[w]hen an examining  physician relies on the same clinical findings as a treating

9   physician, but differs only in his or her conclusions, the conclusions of the

10  examining physician are not 'substantial evidence.'"  *Id.*

11          A non-examining physician's opinion constitutes substantial evidence when

12  it is supported by other evidence in the record and consistent with it.  *Andrews v.*

13  *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a non-examining

14  physician's opinion cannot by itself constitute substantial evidence.  *Widmark v.*

15  *Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

16          The ALJ gave Dr. Tan's opinion "little weight" because it was (1)

17  "inconsistent with the weight of the evidence as a whole, including the claimant's

18  testimony"; (2) the opinion contained "speculative" assessments that were "not

19  supported by sufficient objective medical evidence;" and (3) the opinion is

20  "exaggerated" in comparison with Dr. Tan's treatment records.  AR 19.

21          Dr. Tan diagnosed lumbar radiculopathy and diabetes.  AR 658, 666.  In a

22  "Lumbar Spine Residual Functional Capacity Questionnaire," Dr. Tan opined that

23  Tapia can stand for no more than 10 minutes at one time, sit for no more than 15

24  minutes at one time, and sit/stand/walk for less than 2 hours in an 8-hour

25  workday.[3]  AR 659-60.  Tapia can never lift anything.  Every 10 minutes, Tapia

26

27          [3]  In both RFC forms, Dr. Tan answered "yes" to the question "Is your
    patient a malingerer?".  AR 658, 662.  This Court assumes that Dr. Tan's answer
28  is a typographical error.

                                            5

1     must walk around for about 10 minutes.  On the other hand, Tapia does not need

2     to shift positions at will or take unscheduled breaks.  AR 659.  Tapia's pain is

3     "constantly" severe enough to interfere with the attention and concentration

4     needed to perform even simple work tasks.  AR 660.  Tapia's limitations with

5     reaching, handling or fingering render her unable to work.  AR 661.

6         In a "Diabetes Mellitus Residual Functional Capacity Questionnaire"

7     completed on the same day, Dr. Tan again opined that Tapia's pain and other

8     symptoms "constantly" interfere with attention and concentration needed to

9     perform even simple work tasks.  AR 663.  Tapia is "unable to work."  *Id.*  She

10    can sit up to 30 minutes at one time, stand up to 30 minutes at one time, and

11    sit/stand/walk less than 2 hours in an 8-hour workday.  *Id.*  Every 10 minutes,

12    Tapia must walk around for 10 minutes.  AR 663-64.  Again, however, Tapia does

13    not need to shift positions at will or take unscheduled breaks.  AR 664.  She

14    should avoid exposure to extreme cold, extreme heat, high humidity, fumes,

15    odors, chemicals and solvents.  AR 665.

16        In a "Medical Evaluation Form" completed on the same day, Dr. Tan

17    opines that Tapia is unable to stand due to severe pain, can sit for 30 minutes,

18    can sit/stand alternatively for 15 minutes, and cannot walk for more than 15

19    minutes.  AR 668.  She has stiffness and pain in her fingers, and has no ability to

20    engage in sustained work.  *Id.*

21        Inconsistency with the claimant's testimony constitutes a specific and

22    legitimate reason to discount Dr. Tan's opinion.  *See Rollins v. Massanari*, 261

23    F.3d 853, 856 (9th Cir. 2001) (inconsistency with plaintiff's own reports and

24    testimony was a specific and legitimate reason to reject treating doctor's opinion).

25    In contrast to Dr. Tan's functional limitations, Tapia testified that she shops for up

26    to an hour at a time and she watches TV approximately one hour in the morning

27    and two hours in the afternoon.  AR 38, 39.  She also testified that she bathes,

28    cleans and dusts around the house, and makes a sandwich or soup for herself.

1    AR 37.   In the Function Report, dated June 8, 2007, Tapia represented that she

2    shops once a week for 1-2 hours and walks up to a half mile before needing a 6-

3    minute rest.[4]  AR 137, 139.  Tapia denied the use of mobility devices, noting that

4    she used only a back brace and orthopaedic shoes.  AR 140.  Further, the ALJ

5    observed on the record that Tapia was able to sit through the hearing, which

6    lasted an hour and a half, except for a few minutes when she stood.  AR 63.

7         The ALJ also discounted Dr. Tan's opinion on the ground that it was not

8    supported by the evidence as a whole.  AR 19.  In August 2007, Dr. Siciarz, an

9    examining physician, found no tenderness at the cervical or lumbar spine, range

10   of motion in the knees and ankles within normal limits, good muscle tone, muscle

11   strength of 5/5 in all extremities and a gait within normal limits.[5]  AR 398-399.  Dr.

12   Siciarz found decreased sensation in both lower extremities.  AR 399.  Dr. Siciarz

13   opined that Tapia had "functional limitations due to back pain, left shoulder pain,

14   diabetes and hypertension," that she could "lift and carry up to 50 pounds

15   occasionally and 25 pounds frequently," that she could "sit, stand, and walk for 6

16   hours in an 8-hour workday," and that she could reach, "limited to the left upper

17   extremity to above reach level."  AR 399.  Dr. Siciarz's opinion constitutes

18   substantial evidence.  *See Orn*, 495 F.3d at 631 (an examining physician's

19   opinion constitutes substantial evidence when it is based on independent clinical

20   findings).  Dr. Boetcher, a non-examining physician, opined that Tapia could

21   perform medium work, with the exception of overhead work with the left upper

22   extremity.  AR 402-407.

23

24        [4]  Dr. Pinanong's evaluation in August 2007 similarly reports that Tapia
     stated she is able to shop, cook, perform personal affairs, and use public
     transportation.  AR 393.

25

26        [5]  Dr. Gross, a treating physician who examined Tapia after a car accident
     in March 2007, found that Tapia's lumbar spine showed slight limitation of motion
     and diagnosed lumbar sprain with preexisting 1 mm disk bulge at L2, L3, L4 and

27   L5.  AR 540-541.  He recommended conservative treatment consisting of pain
     killers and exercises, and possibly cortisone injections if her condition did not

28   improve in 3-4 weeks.  AR 541.

In addition, "'the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings.'" *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted); *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004).  In finding Dr. Tan's opinion exaggerated, the ALJ cited Dr. Tan's treatment records.  AR 19, 283-365, 469-531.  Tapia underwent tests in 2008 due to abdominal pain, toe contusion, left ankle contusion, gastritis, lumbar pain, and pelvic pain.  AR 505, 506, 517-519.  The lumbar MRI was largely normal except for "mild narrowing of the disc space and disc dessication" at L2-L3 and L4-L5, and a 1 mm disc bulge at L2-L3, L4-L5 and L5-S1.  AR 518, 520.  The nerve conduction study was normal.  The EMG shows chronic denervation at L4, L5 and S1.  AR 656.  X-rays showed a fracture of the fifth toe on the right foot, and soft tissue swelling without evidence of fracture on the left ankle.  AR 505, 507-508.  Tapia had moderate chronic gastritis, mild reflux esophagitis, and an echogenic liver due to fatty infiltration.  AR 198, 506, 517.  No abnormality was detected in her pelvis.  AR 519.  In 2007, Tapia's neurologic examination was "unremarkable," she had normal muscle bulk and tone, and strength was 5/5 throughout all muscle groups.  She reported being able to perform activities of daily living without difficulty.  AR 295-297.  MRI tests found 1 mm disc bulges and disc dessication at L2-3 and L4-5, and "some mild hypertrophic degenerative change of the lower thoracic and upper lumbar spine."  AR 384.  Tapia had mild osteopenia in the cervical spine.  AR 253.  An EMG and nerve conduction study was abnormal and consistent with peripheral polyneuropathy and chronic denervation at L4, L5 and S1.  AR 376-80.  In 2003, a left ribs x-ray noted thoracic spondylosis.  AR 211.  In 2001, Tapia had degenerative joint disease in her left clavicle and mild degenerative changes in her lumbar spine.  AR 300, 303.  In May 2007, Tapia was discharged from physical therapy with some goals having been met.  AR 286.

1    Given the claimant's testimony, the record as a whole, and the lack of
2  objective findings to support Dr. Tan's extreme limitations, the ALJ provided
3  specific and legitimate reasons to discount Dr. Tan's opinion.

4                                     **IV.**

5                                   **ORDER**

6    IT IS HEREBY ORDERED that the decision of the Commissioner is
7  affirmed.

8    IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this
9  Order and the Judgment herein on all parties or their counsel.

10

11  DATED: March 8, 2011
12                              _____
                                     ALICIA G. ROSENBERG
                                  United States Magistrate Judge

9